IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAISHA MYLES,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NELSON STAFFING SOLUTIONS,<br><br>　　　　Defendant.<br>_____/ | No. C 06-07792 CRB<br><br>**ORDER GRANTING<br>MOTION TO ENFORCE<br>SETTLEMENT AGREEMENT** |

　　Maisha Myles ("Plaintiff") alleges that an employment agency, Nelson Staffing Solutions ("Defendant"), placed her in several positions with other companies where she encountered a hostile work environment. Through this lawsuit, she asserts claims against the agency for employment discrimination and retaliation.

　　Shortly after filing her complaint, Plaintiff offered to settle her claims for $5,833.33, and Defendant promptly indicated that it would accept her offer. Negotiations then ensued about the precise terms and language of the written agreement. Ultimately, Plaintiff refused to sign the agreement. Defendant now moves to enforce the parties' unsigned "settlement agreement." The Court held an evidentiary hearing to resolve some of the disputed and unresolved facts surrounding the settlement process. Here, the Court sets forth its findings of fact and conclusions of law. For the reasons set forth below, Defendant's motion to enforce the settlement agreement is GRANTED.

## FINDINGS OF FACT

Plaintiff's complaint alleges that between 2003 and 2005, she worked at several companies in jobs that had been provided to her via Defendant's staffing services. Compl. ¶¶ 7-16. She alleges that Defendant placed her in positions with several different companies, including Siemens Medical Solutions and Bank of the West. See Pl.'s Decl. Exs. T, U, V, W, X. She claims that she witnessed, and was subjected to, discriminatory treatment at these companies. She further claims that these two companies, as well as Defendant and other companies associated with Defendant, such as CDI, retaliated against her when she complained about their improper conduct. Plaintiff views these various entities as "joint tortfeasors." Arena Decl. Exs. G, I. Plaintiff filed claims against all of these entities with the EEOC, and all of her claims were denied. Plaintiff then filed this lawsuit, naming only Nelson Staffing Solutions as a defendant.

After the complaint had been filed, Defendant sent Plaintiff a "meet and confer" letter. Defendant's letter stated:

> As to the requirement under Rule 26(f) that the parties meet and confer "to consider the nature and basis of their claims and defenses and the possibilities for a prompts settlement or resolution of the case," we request that you provide us with a formal settlement demand so that we can discuss the demand with our clients to ascertain whether the case may be resolved at an early stage in the litigation.

Pl.'s Decl., Ex. A, at 2. Plaintiff further testified that she held conversations on the phone with defense counsel, who, according to her, was insistent that Plaintiff provide a settlement offer. Plaintiff indicated that she had been reluctant to provide a settlement offer, but that she felt pressured to do so by defense counsel.

Four days later, Plaintiff responded with the following a demand letter that contained the following paragraph:

> A case has already been filed in federal court and I am prepared to file in state court for the remaining causes of action. Please contact me within the next 10 (ten) days if you are interested in settling this matter for $5833.33 (five thousand eight hundred thirty three dollars and thirty three cents), a fraction of the legal fees that are certain to happen for you if you continue your current plan of action. I will seek judicial satisfaction if I do not hear from you [by] March 30, 2007 in response to this 1 time, non-negotiable offer.

//

Arena Decl. Ex. B. Less than a week later, defense counsel sent an email to Plaintiff indicating that "our client has accepted your offer to resolve this matter for $5,833.33." Arena Decl. Ex. C. The parties then filed a joint stipulation with the Court, requesting a continuation of all deadlines because they had "reached agreement in principal [sic] to settle the [case]." Arena Decl., Ex. D, at 2.

The parties then exchanged a series of e-mails about the details of their settlement. Defendant initiated the process by sending Plaintiff a standard "boilerplate" settlement agreement. Arena Decl. Ex. C. Plaintiff responded that she had "read the agreement," and she expressed concern about the scope of the release, specifically noting that the agreement should not release Defendant's "joint venture partners," against whom she also wished to assert causes of action. Arena Decl. Ex. E. Also, she indicated that she would send "demand letters" to other parties, including CDI, Siemens, and Bank of the West. Id. She concluded: "If they all come on board we have an agreement." Id.

Plaintiff's initial response thus suggested that she wanted the settlement agreement to include parties other than Defendant. At the evidentiary hearing, defense counsel testified that he did not understand exactly what course Plaintiff wanted to pursue. He observed that Plaintiff's letter simultaneously suggested changes to the settlement agreement and also made reference to potential agreements with other parties. In response, defense counsel sent a letter to Plaintiff indicating that he was "unclear as to exactly what it is [she was] proposing in [her] email." Arena Decl. Ex. E. Accordingly, he attached a revised settlement agreement that incorporated "changes to the agreement in light of . . . the issues [she] raised in [her] email," including a "mutual release" and a more narrow release of parties associated with Defendant. Id.

Plaintiff responded that the scope of the release in the revised agreement was still "too broad." Arena Decl. Ex. G. She expressed concern that the agreement released not only Defendant but also "those working on [its] behalf," and she worried that this language would preclude her claims against some of the entities that had discriminated against her. Id. Further, she proposed adding CDI and Siemens as defendants "in the current action," based

on her view that "they are equally responsible for the tortious conduct alleged in the administrative complaint." Id. She also indicated that she planned to file a complaint in state court against Bank of the West, asserting related causes of action. Id.

Concerned that Plaintiff was shying away from the settlement agreement, Defendant sought clarification about exactly what she wanted. Defendant wrote the following letter:

> With regard to your March 27 email regarding settlement, we are attaching herewith a revised settlement agreement which addresses the concern you raised about the breadth of paragraph one of the agreement. Consistent with your proposal, we have removed the language from the paragraph defining [Defendant] to include "those working for it or on its behalf."
>
> We are confused about the rest of your email in which you propose adding CDI and Siemens as defendants to the case, as we believe the case has been settled. If you are now adding additional settlement terms to the proposal you made on March 23, please state exactly what those settlement terms are. If you are not proposing any new settlement terms, please so indicate.

Arena Decl., Ex. H, at 2. Plaintiff responded with an e-mail expressing her appreciation for the revisions, but also expounding her view that Defendant and the other companies were "joint tortfeasors in this action." Arena Decl., Ex. I. She requested Defendant's consent to amend the complaint to include other defendants and indicated that she would otherwise seek permission from the Court to do to so. Id.

Defendant then sent two letters to Plaintiff. In the first, Defendant stated its objections to the idea of amending the complaint. See Pl.'s Decl. Ex. Z. In the second, Defendant summarized the parties' correspondence to date regarding the status of the settlement agreement. Defendant's letter then stated:

> With respect to the issue of the settlement status of this case, it is important that you state in very clear terms what issues there are (if any) regarding settlement. If there are changes to the settlement agreement you wish to propose, please state exactly what they are. In fact, we would recommend that you mark up the latest version of the settlement agreement to show exactly what your proposals are, if any.

Arena Decl., Ex. J, at 5. Plaintiff responded with a detailed email about the changes she wished to see to the agreement. Specifically, she attached a red-lined version of the agreement that, once again, narrowed the scope of the language of Defendant's release. As to the terms of her settlement agreement with Defendant, her email stated:

//

4

> I propose in consideration for the release of Nelson and any co. a reasonable factfinder would consider a Nelson co. (present or future) (including its ees [employees], agents, insurers and such and *excluding* its affiliates, business partners and their ees [employees], agents, insurers and such) from Case No. C 06 7792 defendant Nelson remit $5833.33 to plaintiff.

Arena Decl., Ex. K., at 1. Plaintiff's letter thus clearly indicated an intent to settle all of her claims against Defendant in exchange for a payment of $5833.33, so long as the settlement agreement excluded other possible defendants. Three days later, Defendant responded with a revised settlement agreement that "accepted all of the changes" proposed by Plaintiff. Arena Decl., Ex. L, at 1.

Meanwhile, as the parties were discussing the settlement agreement, court-imposed deadlines were approaching. Defense counsel suggested a stipulation to extend those deadlines and proposed language that would have indicated to the Court that the parties had settled the case. See Pl.'s Decl. Ex. EE. Plaintiff objected to this proposed stipulation, specifically objecting to the suggestion that they had "reached a sett agmt." Arena Decl. Ex. M. Plaintiff instructed defense counsel that he had not "incorporated all of the changes I requested" or "indicated what issues" might have been raised by her request. Id. Plaintiff stated:

> I suggest you print the . . . sett agmt I redlined for you[.] [P]lease go through it line by line w/a ruler and make a checkmark next to each change as you incorporate it into a new draft[.] [M]ake notes directly on the printed agmt indicating what issues you have w/any o[f] my changes.

Id. She directed defense counsel to let her know about any problems with the settlement agreement "asap." Id. Within an hour, Defendant responded with yet another revised settlement agreement, accepting each and every one of Plaintiff's proposed changes. Arena Decl. Ex. N. The following day, the parties submitted a joint stipulation to the Court indicating that they were "in the process of memorializing a settlement agreement." Arena Decl., Ex. O., at 2.

After the stipulation had been filed, Plaintiff responded with an email communicating her appreciation for defense counsel's work on the minutiae of the settlement agreement, and expressing her "thanks for all the [word]smithing." Arena Decl. Ex. P. She requested one last change to expand the scope of her own release: "in the mutual release please have

5

Nelson forever discharge Myles *and Myles' heirs, assigned, executors and administrators*." Id. With this change, Plaintiff stated: "I think we're done." Id.

Defendant revised the agreement, once again accepting the proposed language, and sent to Plaintiff what it considered the final version of the settlement agreement for her signature. Arena Decl. Ex. Q. Plaintiff responded only with an email noting, cryptically, that she had scheduled a mediation with Bank of the West in connection with a complaint she had filed against that entity in state court. Arena Decl. Ex. R. After another two weeks had passed without any response, Defendant sent a letter asking Plaintiff to sign the settlement agreement. Arena Decl. Ex. R. Defendant further indicated that, unless Plaintiff signed the agreement, it would "bring a motion to enforce the settlement agreement, and . . . to recover its attorneys' fees and costs incurred as a result of having to bring the motion." Arena Decl. Ex. S. Plaintiff replied:

> Thank you for all your hard work on the agmt. I know it's a lot of back and forth. I'm an unlettered self-represented P w/little specialized knowledge in this area. However, I believe an injured P can recover from all responsible parties. I'd be happy to sign and return the agmt to you. D will receive a [dismissal without prejudice]. Please change the agmt to reflect that. Otherwise good luck with your motions.

Pl.'s Decl. Ex. OO. She described her interpretation of Defendant's previous letter as a threat to an "unemployed self-represented plaintiff," and she accused defense counsel of subjecting her to "duress." Id. She indicated that Defendant was simply being "impatient" with her effort to obtain relief against the other "tortfeasors." She indicated that Defendant could terminate the lawsuit only if it would agree to "all of [her] total damages in the amount of $267,499.99," but that otherwise she would refuse to dismiss her claims. Id.

Communication between the parties then deteriorated. When Defendant again asked that Plaintiff sign the settlement agreement and provided a legal argument why it believed their agreement was binding, Plaintiff suggested that Defendant had engaged in unethical behavior. Pl.'s Ex. QQ. She stated that she was "not impressed with defendant's attempts to get [her] to sign the agreement against [her] will." Id. Plaintiff said that "if we have indeed 'executed' an agreement then I hereby rescind that agreement." Id. Thereafter, Plaintiff applied to work for Defendant again, requesting to be posted a five jobs that the staffing

6

1 agency had advertised. Pl.'s Ex. TT. She indicated that she would "file a new administrative
2 complaint to include the subsequent acts of discrimination and retaliation" if Defendant
3 failed to rehire her. Pl.'s Ex. TT. Defendant brought a motion to enforce the unsigned
4 "settlement agreement" shortly thereafter.

## CONCLUSIONS OF LAW

Under Ninth Circuit law, this Court "has the equitable power to enforce summarily an agreement to settle a case pending before it." Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987). Yet the Court can enforce a settlement agreement only when the parties have executed a complete agreement, agreed as to all of its material terms, and intended to be bound by it. Id. Although a district court's decision to enforce a settlement agreement is reviewed for abuse of discretion, the court must base its decision about the existence and effect of a settlement agreement on the facts of the particular case. Id. "Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." Id.

Because the parties disputed whether they had actually reached a complete settlement agreement and had intended to be bound by it, the Court held such an evidentiary hearing. At the hearing, both Plaintiff and defense counsel testified about the course of their negotiations, and both were subject to cross-examination. Their testimony corroborated all of the documentary evidence cited above. Furthermore, neither witness gave any indication that the documents entered into evidence did not provide a complete account of their interactions. The only testimony that deviated in the slightest from the paper trail described above was Plaintiff's suggestion that she had made an initial offer to settle the case only because she felt pressured to do so by defense counsel.

Based on the papers submitted by the parties and their testimony at the evidentiary hearing, the Court conclude that the parties have entered into a binding agreement.[1] Clearly,

---

[1] In evaluating a putative settlement agreement, the parties dispute whether the Court should apply federal or California law. Plaintiff favors federal law, noting that in several cases construing *waivers* of discrimination claims, the Ninth Circuit has indicated that federal law applies. See Stroman v. West Coast Grocery Co., 884 F.2d 458, 461 (9th Cir. 1989) ("The

7

Defendant is satisfied with the terms of the agreement and wishes to be bound by it. The only question is whether Plaintiff is bound by that agreement, too. The Court concludes that she is.

As for the material terms of the settlement agreement, the Court concludes that all of them are included what the papers describe as the "fifth" revised settlement agreement. Arena Decl. Ex. Q. Clearly, the most important term of the agreement, the amount of the settlement, has always been clear. The only aspect of the settlement agreement that was ever in question was the scope of the release. As to that issue, Plaintiff sent three separate requests to narrow the scope of Defendant's release and two requests to broaden her own. See Arena Decl. Ex. E (stating that the release should "exclude joint venture partners," and should be a "mutual agreement to bar any claims"); Arena Decl. Ex. G (stating that Defendant's release was "still too broad"); Arena Decl., Ex. K, at 1 (stating that the release should exclude Defendant's "affiliates, business partners and their ees [employees], agents, insurers and such"); Arena Decl. Ex. P (stating that the release should include "Myles' heirs, assigned, executors and administrators"). Defendant accepted each and every one of these requests, incorporating Plaintiff's proposed changes verbatim. Finally, and most significantly, Plaintiff indicated in writing her view that, with each of these changes made, the parties were "done." Id.

At the evidentiary hearing, Plaintiff identified no material term that was absent or omitted from the "fifth" revised settlement agreement. Indeed, in direct response to questioning from the Court, she stated that she intended to release all of her claims against

---

interpretation and validity of a release of claims under Title VII is governed by federal law."). Defendant favors California law, noting that in cases evaluating the binding effect of actual or putative *settlement agreements*, the Ninth Circuit has applied state law. See United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992) ("The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally. This is true even though the underlying cause of action is federal."). The Court finds the parties' dispute immaterial to the disposition of the case. Under either federal or California law, the Court finds that the parties' putative settlement agreement must be viewed as binding. Indeed, under Plaintiff's preferred case, Callie v. Near, just as under the California cases cited by Defendant, the critical question is whether the parties had reached agreement as to all of the material terms of the agreement and had intended to be bound by it. Callie, 829 F.2d at 890-91. Those conditions are satisfied here.

8

Nelson for a payment of $5833.33, so long as she remained able to pursue her claims against the other parties she considered culpable. Given the correspondence in the record and Plaintiff's testimony, the Court concludes that the "fifth" revised agreement incorporates all of the material terms regarding the settlement of her claims against Defendant, including a release as to all of Defendant's "[employees], agents, insurers and such." Arena Decl., Ex. K., at 1.

The Court also concludes that Plaintiff intended to be bound by the agreement. It is true, as Plaintiff notes, there is evidence in the record to suggest that Plaintiff did not want to resolve her claims against Defendant until she had reached a global settlement of all her claims against all potential defendants. See, e.g., Arena Decl. Ex. E ("If [the other defendants] all come on board we have an agreement."); Arena Decl. Ex. G ("I propose joining CDI and Siemens in the current action as they are equally responsible for the tortious conduct alleged in the administrative complaint.").

Notwithstanding this evidence, the Court concludes that Plaintiff entered into a binding contract with Defendant. First, Plaintiff's initial demand for settlement did not contain any condition regarding the resolution of her claims with other parties. To the contrary, Plaintiff sent an exploding offer, designed to induce immediate acceptance by Defendant, with a veiled threat that it would be in Defendant's best interest to accept her offer quickly, rather than prolong what otherwise would be very costly litigation. See Arena Decl. Ex. B.

Second, after Plaintiff had communicated her desire to add other parties to the settlement agreement or to add them as defendants in the litigation, Defendant sought clarification of her intentions. Specifically, Defendant indicated its desire to proceed with the settlement of her claims against it. In response, Plaintiff sent a thoroughly marked-up version of the agreement. When Defendant asked her to sign the agreement, she responded only that it should go through her proposed changes and send her a revised copy "asap." Arena Decl. Ex. M. She said nothing about her desire to wait to see how any of her other claims unfolded, notwithstanding the fact that she was proceeding with them in other forums.

9

Third, Plaintiff communicated to the Court on two separate occasions that she had reached an agreement to settle the case. To begin, she consented to a stipulation to continue all deadlines in this case because the parties had "reached agreement in principal [sic] to settle the [case]." Arena Decl., Ex. D, at 2. Next, she consented to another stipulation in which the parties stated that they required additional time because they were "in the process of memorializing a settlement agreement." Arena Decl., Ex. O., at 2. Plaintiff notes that she initially objected to this second stipulation because it originally had stated that the parties had "reached" a settlement agreement. Arena Decl. Ex. M. She notes that the stipulation was later revised to state only that they were "memorializing" the agreement. Arena Decl., Ex. O., at 2. But Plaintiff's argument ignores the fact that her objection was based only on the fact that Defendant had not "incorporated all of the changes [she] requested," which Defendant did that same day. Simply put, the only reservations that Plaintiff expressed about the settlement agreement at the time she signed this last stipulation were resolved exactly the way that she wanted.

Fourth, in response to Defendant's query about how she wished to proceed with the settlement discussion, Plaintiff sent a letter that explicitly stated that she would relinquish her claims against Defendant in "Case No. C 06 7792" so long as Defendant agreed to "remit $5833.33" to her. Arena Decl., Ex. K., at 1. Once again, her demand made no mention of other companies, except for the requirement that the settlement agreement should exclude them from the release, which it unquestionably did. Id.

Finally, the Court notes that Plaintiff is extremely sophisticated. In her testimony before the Court, she was thoughtful, articulate, and intelligent. The briefs she has presented to the Court are clear, compelling, well-researched, and well-argued. Her comprehension of the law is astounding for a layman, and her mastery of the *Bluebook* suggests that she would make a valuable law review editor. As an example, consider the following excerpt from her brief in opposition to Defendant's motion:

> Several factors help determine whether the parties intended to be bound in the absence of a document executed by both sides: (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of

10

>    the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing. These circumstances may be shown by oral testimony or by correspondence or other preliminary or partially complete writings. *Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 323 (2d Cir. 1997); *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74-75 (2d Cir. 1984); Winston, 777 F.2d at 83 (the district court erred and enforced an agreement that was never signed where 3 out of 4 elements showed the parties did not intend to be bound without a signed settlement agreement).

At the end of this paragraph, she places a footnote that succinctly rebuts an argument advanced by Defendant about the parole evidence rule:

>    Defendant's argument that the writings are inadmissible as parole evidence is improper because the writings show the intentions of the parties at the time. The court must consider the parties' intentions to determine whether a complete agreement exists.

Pl.'s Opp. at 5-6. Not only is her legal analysis remarkable, but the record demonstrates that Plaintiff is a very effective litigator. Consider, for example, her demand letter--an exploding offer that demonstrates an understanding of transaction costs and other forms of leverage:

>    A case has already been filed in federal court and I am prepared to file in state court for the remaining causes of action. Please contact me within the next 10 (ten) days if you are interested in settling this matter for $5833.33 (five thousand eight hundred thirty three dollars and thirty three cents), a fraction of the legal fees that are certain to happen for you if you continue your current plan of action. I will seek judicial satisfaction if I do not hear from you [by] March 30, 2007 in response to this 1 time, non-negotiable offer.

Id. at 5 n.1. The record shows that Plaintiff conducted herself with similar sophistication when the settlement negotiations began to fall apart. In response to Defendant's threat to bring a motion to enforce the settlement agreement and try to recoup attorneys' fees, Plaintiff indicated that she had recently reapplied for employment with Defendant and threatened to bring additional administrative claims if it failed to rehire her.

Ordinarily, as Plaintiff herself astutely notes, a *pro se* plaintiff is entitled to a court's solicitude and protection, "as they are unskilled in legal matters and prone to errors." Pl.'s Opp. at 12 (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992), and Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987)). Here, however, the Court believes that Plaintiff has demonstrated she is more than capable of looking after her own legal interests. Indeed, far from being a discussion between two parties with unequal bargaining power, the

11

Court notes that, during the settlement negotiations in question, Defendant acceded to all of Plaintiff's demands about the terms of the settlement agreement--every single one of them.

## CONCLUSION

Under these circumstances, the Court concludes that Plaintiff and Defendant agreed to all the material terms of a settlement agreement, and that both parties intended to be bound by it. Accordingly, Defendant's motion to enforce the settlement agreement is hereby GRANTED. The Court expresses no opinion about the merits of the claims set forth in Plaintiff's complaint, nor any view about whether Plaintiff might prevail upon any claims that might be asserted against other parties based on the allegations contained therein, other than to note that such claims would not be barred by her settlement agreement with Defendant. The Court will retain jurisdiction over the case to ensure satisfaction of the settlement agreement. Upon the submission of proof that Defendant has remitted to Plaintiff the required payment of $5,833.33, the Court will dismiss Plaintiff's claims with prejudice.

**IT IS SO ORDERED.**

Dated: July 30, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE